HORACE W. CARPENTIER, Respondent, v. CHARLES MINTURN, Appellant.

(GENERAL TERM, SECOND DEPARTMENT, 1872.)

A foreign statute of limitation is not a bar to an action here.

To a complaint on promissory notes, the defendant set up in defence a failure of consideration, for the reason that the notes were given for exclusive ferry rights which the payee held under a city ordinance, which proved, upon judicial determination, *ultra vires* of the city corporation. *Held*, no defence, and demurrable for that reason.

Also, that the mistake of the vendor and vendee was in regard to a general law of the land.

THIS was an appeal by the defendant from an order at Special Term in Kings county, sustaining a demurrer to parts of the defendant's answer.

The complaint was on two promissory notes for $500 each, and interest at the rate of three per centum per month, seve-

Carpentier *v.* Minturn.

rally bearing date April 14, 1858, and made at San Francisco, California, by the defendant and others, jointly and severally, to the plaintiff.

The complaint averred that a statute of the State of California, of April 13, 1850, authorized contracts in writing for the payment of any stipulated rate of interest on money due or to become due, and that, under this statute, judgment upon such an agreement should conform to the rate of interest provided for thereby, and that the notes were made and delivered pursuant to such statute.

The defendant admitted the execution and delivery of the notes as alleged; denied knowledge or information sufficient to form a belief whether they were correctly described in the complaint; also as to the alleged statute of California, and delivery of the notes pursuant thereto, and the ownership of the notes; it denied that the notes were valid contracts, and the defendant's liability thereon, set up the statute of limitations, and also the following as defences to the action, viz. :

" Third. And as a separate and distinct defence to the said complaint, this defendant alleges that the said promissory notes were made, executed and delivered to the said plaintiff by this defendant and the Contra Costa Steam Navigation Company, under a certain sale and assignment, or indenture, made the 21st day of October, 1854, by and between the said plaintiff and Edward R. Carpentier and Harriet N. Carpentier, of the first part, and this defendant and the Contra Costa Steam Navigation Company, of the second part, whereby the said parties of the first part granted, bargained, sold and assigned unto the said parties of the second part, their legal representatives and successors, or assigns, for the term of twenty years, from the twelfth day of March, 1853, all the exclusive right and privilege of landing with steam ferryboats running between the city of Oakland and the city of San Francisco, or between the said city of Oakland and any other place, at any wharf or landing which then was or might thereafter be constructed in said city of Oakland, which the said parties of the first part, or either of them, may have

acquired or were entitled to, by virtue of any ordinance of the board of trustees of the town of Oakland, or of any deed or conveyance, contract or grant, from said town, and particularly a certain contract for the establishing and maintaining a public ferry between the said city of Oakland and the said city of San Francisco, or between the said city of Oakland and any other place, entered into between the said Edward R. Carpentier and the said town of Oakland, on the twelfth day of March, 1853; together with all his rights, privileges and franchises, and interest, under and by virtue of said contract, and of a certain ordinance of the board of trustees of the town of Oakland, passed the fifth day of March, 1853, and entitled 'An ordinance to create a public ferry between the town of Oakland and the city of San Francisco, and to provide for keeping up and running the same;' and also all his right, title and interest in the ferry then in operation, under said ordinance and contract, a copy of which said ordinance and contract are hereto annexed as part of this answer, and marked A and B, and for no other consideration whatever; which said ordinance was made under and by virtue of the third section of an act of the legislature of the State of California, entitled 'An act to incorporate the town of Oakland, and to provide for the construction of wharves thereat,' approved May 4, 1852, and which is as follows, to wit: 'That the board of trustees shall have power to make such by-laws and ordinances as they may deem fit, proper and necessary to regulate, improve, sell and otherwise dispose of the common property, to prevent and extinguish fires, to lay out, make, open, widen, regulate and keep in repair, all streets, roads, bridges, ferries, public places and grounds, wharves, docks, piers, slips, rivers, wells and alleys, to authorize the construction of the same; and with a view to facilitate the construction of wharves and other improvements, the lands lying within the limits aforesaid, between high tide and ship channel, are hereby granted and released to said town;' and this defendant alleges that the said contract and ordinance, so sold

and assigned to him as aforesaid, and for the assignment of which to him, as aforesaid, the promissory notes set forth in the said complaint were given by this defendant, as aforesaid, were wholly null and void.

That the said board of trustees had no lawful power or authority to make said contract, or to make or pass said ordinance. That they did not convey or give to the holders or owners thereof any right or title to the exclusive right or title and privilege of landing with steam ferry boats running between the said city of Oakland and the said city of San Francisco, or between the said city of Oakland and any other place, at any wharf or landing which then was or might thereafter be constructed in said city of Oakland; and that the said third section of said act of the Legislature of the State of California, under and by virtue of which the said ordinance was passed and said contract was made, so far as it undertook to grant said exclusive right or privilege of ferriage as aforesaid, was repugnant to and in violation of the provisions of the Constitution of the United States, and was utterly null and void.

" And the defendant further alleges, that said third section of said act of the legislature of the State of California did not authorize said board of trustees to make said contract, or to make or pass said ordinance. That said town of Oakland did not own any of said ferry rights or privileges, and said contract and said ordinance were made by said board of trustees without any power or authority whatever, and the same were null and void.

"That said Edward R. Carpentier had no right, title or interest in said ferry then in operation, and that said notes, in consequence thereof, were given to the said plaintiff by the defendants and the said Contra Costa Steam Navigation Company, without receiving any consideration for the same whatever.

" Fourth. And for a separate and distinct defence to the said complaint, this defendant alleges that by an act of the legislature of the State of California, entitled 'An act

defining the time for the commencing civil actions,' passed April 22, 1850, it was enacted by chapter 3, section 17, of the same, 'that an action upon any contract, obligation or liability, founded upon an instrument in writing, excepting upon a judgment or decree of any court of the United States, or of any State or Territory within the United States, shall be commenced within four years from the time;' and this defendant alleges that the alleged causes of action, set forth in said complaint, did not accrue within four years before the commencement of this action.

"Fifth. And for a separate and distinct defence, and as a counter-claim to the said complaint, this defendant alleges that after the making of the said assignment of said exclusive right or privilege of ferriage by the plaintiff and the said Edward R. Carpentier and the said Harriet N. Carpentier to the defendant and the said Contra Costa Steam Navigation Company, above referred to, the plaintiff demanded, exacted and received, for said pretended exclusive right of ferriage, from the defendant, at sundry times between the second day of August, 1856, and the fourth day of October, 1858, divers sums of money, to wit:" (setting forth a list of payments) "amounting in the aggregate to thirteen thousand and fifty-eight dollars and fifty-one cents ($13,058.51) in gold coin of the United States, and this defendant paid said plaintiff said several sums of money for said assignment of said contract, and said ordinance, copies of which are hereto annexed, as above set forth, pretending to grant said exclusive right of ferriage under the third section of said act of the legislature of the State of California, approved May 4, 1852. And this defendant paid said plaintiff said several sums of money for no other consideration whatever.

" And this defendant further alleges that said contract and said ordinance so sold and assigned to him as aforesaid, and for the assignment of which to him said money was paid as aforesaid, were wholly null and void.

"That the said board of trustees had no lawful power or authority to make said contract or to make or pass said

Carpentier *v.* Minturn.

ordinance. That they did not convey or give to the holders and owners thereof any right or title to the exclusive right and privilege of landing, with steam ferry-boats running between the said city of Oakland and the said city of San Francisco, or between the said city of Oakland and any other place, at any wharf or landing which then was or might thereafter be constructed in said city of Oakland ; and that the said third section of the said act of the legislature of the State of California, under and by virtue of which the said ordinance was passed and said contract was made, so far as it undertook to grant said exclusive right or privilege of ferriage as aforesaid, was repugnant to and in violation of the provisions of the Constitution of the United States, and utterly null and void.

" And the defendant further alleges that said third section of said act of the legislature of the State of California did not authorize said board of trustees to make said contract or to make or pass said ordinance; that said town of Oakland did not own any of said ferry rights or privileges, and said contract and said ordinance were made by said board of trustees without any power or authority whatever, and the same were null and void; that said Edward R. Carpentier had no right, title or interest in said ferry then in operation, and said several sums of money were paid by this defendant to the said plaintiff, as aforesaid, without this defendant receiving any consideration therefor whatever.

" And the defendant further alleges that when said assignment or indenture was made and delivered to this defendant as aforesaid, and when the said plaintiff demanded, exacted and received said several sums of money of this defendant as aforesaid, this defendant supposed and believed that said assignment of said contract and said ordinance gave to this defendant the exclusive right or title and privilege of landing, with steam ferry-boats running between the said city of Oakland and the said city of San Francisco, or between the said city of Oakland and any other place, at any wharf or landing which then was or might thereafter be constructed

in said city of Oakland; and this defendant paid said plaintiff said several sums as aforesaid under said supposition and belief, and in ignorance of the facts that the said plaintiff and the said Edward R. Carpentier and Harriet N. Carpentier had no right to said exclusive privilege of ferriage or to convey the same, and that said contract and said ordinance were wholly null and void, and that said third section of said act of the legislature of the State of California, so far as it undertook to grant said exclusive right or privilege of ferriage as aforesaid, was contrary to the provisions of the Constitution of the United States, and without any force or effect whatever; and that said town of Oakland was not the owner of said ferry rights, and that said board of trustees had no power or authority to make said contract or to make and pass said ordinance; otherwise, the defendant would not have paid, or undertaken to pay, said several sums of money to the said plaintiffs, nor either of them; and this defendant was ignorant of the facts above set forth as aforesaid, and acted under the supposition and belief as aforesaid set forth, and continued ignorant of said facts until after the payment of said sum of money as aforesaid, when it was adjudged by the Circuit Court of the United States for the district of California, at the July term thereof, in the year 1858, in a certain case wherein Edward Minturn was the plaintiff and one Larue and others were the defendants, that said contract and said ordinance did not confer an exclusive right or privilege of ferriage as aforesaid, and that said town of Oakland had no power to grant said exclusive right of ferriage, and that said third section of said act of the legislature of the State of California did not grant said exclusive right or privilege of ferriage as aforesaid, and, so far as it undertook so to do, was contrary to the provisions of the Constitution of the United States, and without any force or effect whatever; which said judgment of said Circuit Court of said district of California was afterward in all things affirmed by the Supreme Court of the United States, at the December term thereof, in the year 1859; that by an act of the legislature of the State of

California, passed March 13, 1850, entitled 'An act to regulate the interest of money,' and which is still in full force and effect, it was provided by the first section of said act: 'When there is no express contract in writing, fixing a different rate of interest, interest shall be allowed at the rate of ten per cent per annum for money received to the use of another.'

"And this defendant further says that said assignment, contract and ordinance were made in the State of California, and said moneys demanded, exacted and received by said plaintiff from the said defendant were demanded, exacted and received as aforesaid, from the defendant, in said State of California, and by reason thereof the said plaintiff became liable to pay said money to this defendant, in said State of California, with the interest thereon as expressed in said statute of the State of California, as above set forth.

"Sixth. And for a separate and distinct defence, and as a counter-claim to the said complaint, this defendant alleges, upon his information and belief, that on or about the month of May, 1852, the said plaintiff and one A. Moon entered into a contract with William N. Brown, of the same purport and effect as said indenture or assignment made between the plaintiff, Edward R. Carpentier and Harriet N. Carpentier, of the first part, and the said defendant and said Contra Costa Steam Navigation Company, of the second part, whereby the said plaintiff and the said A. Moon granted and conveyed said exclusive right and privilege of ferriage to said William N. Brown, under said contract and ordinance, marked exhibits A and B, which said contract, made by said plaintiff and said A. Moon, said William N. Brown immediately thereafter sold, assigned, transferred and set over to this defendant and said Contra Costa Steam Navigation Company, which said company was owned by this defendant.

"And this defendant further alleges that, after the making the said assignment, by the said Brown, to this defendant and said company, the plaintiff demanded, exacted and received for said pretended exclusive right or privilege of

ferriage from this defendant, by virtue of said contract made by said plaintiff and said A. Moon with said Brown, a certain promissory note for $9,000, dated San Francisco, May 1, 1856, signed by this defendant, by W. B. Minturn, his attorney, and by the said W. B. Minturn and Horatio N. Squires, which said promissory note this defendant states, upon his information and belief, was delivered to the said plaintiff by his said attorney, and said plaintiff thereafter demanded, exacted and received, from this defendant, divers sums of money, between the first day of November, 1856, and the fourteenth day of June, 1858, for said pretended exclusive right and privilege of ferriage, on account of said promissory note, as follows, to wit:

"November 6, 1856, $2,250 ; May 4, 1857, $1,000 ; May 12, 1857, $400 ; May 22, 1857, $50; March 24, 1858, $2,250 ; and June 16, 1858, $1,000 ; making in the aggregate the sum of $7,750 in gold coin of the United States; and this defendant paid said plaintiff said several sums of money for said assignment of said contract and said ordinance, copies of which are hereto annexed, as above set forth, pretending to grant said exclusive right of ferriage under the said third section of the act of the legislature of the State of California, approved May, 1852; and this defendant paid said plaintiff said several sums of money for no other consideration whatever.

"And this defendant further alleges that said contract and said ordinance so sold and assigned to him as aforesaid, and for the assignment of which to him said money was paid as aforesaid, were wholly null and void. That the said board of trustees had no lawful power or authority to make said contract, or to make or pass said ordinance ; that they did not convey or give to the holders and owners thereof any right or title to the exclusive right and privilege of landing with steam ferry-boats running between the said city of Oakland and the said city of San Francisco, or between the said city of Oakland and any other place, at any wharf or landing which then was or might thereafter be constructed in said city of Oak

Carpentier v. Minturn.

land; and that the said third section of said act of the legis-
lature of the State of California, under and by virtue of which
said ordinance was passed and said contract was made, so far
as it undertook to grant said exclusive right or privilege of
ferriage as aforesaid, was repugnant to and in violation of the
Constitution of the United States, and utterly null and void.

"And the defendant further alleges that said third section of
said act of the legislature of the State of California did not
authorize said board of trustees to make said contract, or to
make or pass said ordinance; that said town of Oakland did
not own any of said ferry rights or privileges; and said con-
tract and said ordinances were made by said board of trustees
without any power or authority whatever, and the same were
null and void; that said Edward R. Carpentier had no right,
title or interest in said ferry then in operation, and said seve-
ral sums of money were paid by this defendant to the said
plaintiff as aforesaid, without this defendant receiving any
consideration for the same whatever.

"And the defendant further alleges that when said assign-
ment or indenture was made and delivered to this defendant
as aforesaid, and when the said plaintiff demanded, exacted
and received said several sums of money of this defendant as
aforesaid, this defendant supposed and believed that said
assignment of said contract and said ordinance gave to
this defendant the exclusive right or title and privilege of
landing with steam ferry-boats running between the said city
of Oakland and the said city of San Francisco, or between the
said city of Oakland and any other place, at any wharf or
landing which then was or might thereafter be constructed
in said city of Oakland; and this defendant paid said plaintiff
said several sums as aforesaid, under said supposition and
belief, and in ignorance of the facts that the said plaintiff and
the said Edward R. Carpentier and the said Harriet N. Car-
pentier had no right to said exclusive privilege of ferriage, or
to convey the same; and that said contract and said ordi-
nances were wholly null and void; and that said third section
of said act of the legislature of the State of California, so far

as it undertook to grant said exclusive right or privilege of ferriage as aforesaid, was contrary to the provisions of the Constitution of the United States, and without any force or effect whatever; and that said town of Oakland was not the owner of said ferry rights, and that said board of trustees had no power or authority to make said contract, or to make and pass said ordinance; otherwise this defendant would not have paid, or undertaken to pay, said several sums of money to the said plaintiff, nor either of them; and this defendant was ignorant of the facts above set forth as aforesaid, and acted under the supposition and belief as aforesaid set forth, and continued ignorant of said facts until after the payment of said sums of money as aforesaid, when it was adjudged by the Circuit Court of the United States for the district of California, at the July term thereof, in the year 1858, in a certain action wherein Edward Minturn was the plaintiff and one Larue and others were the defendants, that said contract and said ordinance did not confer an exclusive right or privilege of ferriage as aforesaid, and that said town of Oakland had no power to grant said exclusive right of ferriage, and that said third section of said act of the legislature of the State of California did not grant said exclusive right or privilege of ferriage as aforesaid, and, so far as it undertook so to do, was contrary to the provisions of the Constitution of the United States, and without any force or effect whatever; which said judgment of said Circuit Court of said district of California was afterward, in all things, affirmed by the Supreme Court of the United States, at the December term thereof, in the year 1859.

" That, by an act of the legislature of the State of California, passed March 13, 1850, entitled 'An act to regulate the interest of money,' and which is still in full force and effect, it was provided by the first section of said act, ' when there is no express contract in writing fixing a different rate of interest, interest shall be allowed at the rate of ten per cent per annum for any money received to the use of another.'

"And this defendant further says that said assignment, contract and ordinance were made in the State of California, and said money demanded, exacted and received by the said plaintiff from the said defendant, were made, exacted and received as aforesaid from this defendant in the State of California; and by reason thereof the said plaintiff became liable to pay said money to this defendant, in said State of California, with the interest thereon, as expressed in said statute of the State of California, as above set forth.

" Wherefore this defendant demands judgment against the said plaintiff; that said complaint be dismissed, and that said notes be delivered up to this defendant to be canceled, and for the sums of money above set forth in said counter-claims, with interest thereon from the time of said payments as aforesaid, at the rate of ten per cent per annum, besides the costs of this action."

Annexed were copies of the contract and ordinance referred to in the answer.

The plaintiff demurred, as follows:

" Horace W. Carpentier, the plaintiff in this action, by his attorney aforesaid, demurs to the fourth ' separate and distinct answer and defence ' of the defendant to the complaint in this action, by him pleaded, and states and shows to the court here the following grounds of objection and demurrer to the said fourth defence, that is to say : That the said fourth ' separate and distinct defence,' and the matters therein contained, are not sufficient in law to constitute either a counter-claim or defence in this action.

" And the said plaintiff further says that the said fourth defence does not contain facts sufficient to constitute either a defence to the said complaint, and to the said action of the said plaintiff, or a counter-claim thereto, and that it is in other respects uncertain, informal and insufficient. Wherefore the said plaintiff doth demur thereto, and he prays judgment whether he ought further to answer the same or be barred of his said action.

" Second. And the said plaintiff demurs to the fifth ' separate

and distinct defence' by the said defendant fifthly above pleaded as a defence, ' and as a counter-claim to the said complaint,' and says that the same, and the matters therein contained, are not sufficient in law to constitute a defence to the said complaint or to the said action of the said plaintiff.

"And the said plaintiff states and shows to the court here the following further ground of objection and demurrer to the said fifth defence and counter-claim, that is to say : That it does not state facts sufficient to constitute a cause of action in favor of the said defendant against the said plaintiff, nor a counter-claim in favor of the said defendant against the said plaintiff in this action ; and is in other respects uncertain, informal and insufficient. Wherefore the said defendant doth demur thereto, and he prays judgment whether he ought further to answer the same or reply thereto.

" Third. And the said plaintiff demurs to the ' separate and distinct defence " of the said defendant, by him sixthly above pleaded as a defence and as a counter-claim to the said complaint of the said plaintiff, and says that the same and the matters therein contained are not sufficient in law to constitute a defence to the said complaint or to the said action of the said plaintiff.

" And the said plaintiff states and shows to the court here the following further grounds of objection and demurrer to the said sixth defence and counter-claim, that is to say : That the said sixth supposed defence and counter-claim does not state facts sufficient to constitute a cause of action in favor of the said defendant against the said plaintiff, nor a counter-claim in favor of the said defendant against the said plaintiff in this action, and that it is in other respects uncertain, informal and insufficient.

" Wherefore, by reason of the insufficiency of the said sixth defence and counter-claim, the said plaintiff doth demur thereto, and he prays judgment whether he ought further to answer the same or reply thereto, and he also prays judgment as in and by his said complaint he has already prayed."

*Charles N. Black* and *S. P. Nash* for the appellant. The act of the State of California did not authorize the trustees of Oakland to make the contract and ordinance. (*Minturn* v. *La Rue*, 1 McGill, 370; 23 How., 435.) They contended substantially that the subject of the alleged purchase was not a matter of doubtful right, but had in reality and fact no existence, and hence could not support a promise, citing *Sherman* v. *Barnard* (19 Barb., 291; *Gardner* v. *The Mayor, etc.* 26 id., 423). Also, that if the money was paid in mistake it was one of fact not of public law, as the charter of Oakland was but a private act. (Sharswood's Black. Com., vol. 1, p. 85 and notes; introduc. § 3; Story on Cont., § 101.)

*J. S. Carpentier* and *John K. Porter*, for the respondent, among other grounds for affirmance, contended that the fourth, fifth and sixth defences contained new matter not constituting a counter-claim and were bad in substance, citing Code of Procedure. (*Merritt* v. *Millard*, 5 Bosw., 645; *Lawrence* v. *Simmons*, 34 Barb., 355, 358; *N. Y. & Harlem R. R.* v. *Marsh*, 12 N. Y., 308; *Fleetwood* v. *City of New York*, 2 Sand., 475; *Louber* v. *Selden*, 11 How. Pr., 526.) That the foreign statute of limitation could not be pleaded. (*Ruggles* v. *Keeler*, 3 John., 263; *Lincoln* v. *Battelle*, 6 Wend., 475; *Christmas* v. *Russell*, 5 Wal., 290, 301; Story's Confl. of L., § 577; *Toulandon* v. *Lachenmeyer*, 6 Abb. Pr. [N. S.], 215; 1 Sweeney, 45; *Bulger* v. *Roche*, 11 Pick., 36; *Dwight* v. *Clarke*, 7 Mass., 516; *Power* v. *Hathaway*, 43 Barb., 214.) That there was a mistake, not of fact, but of law. (*Curtis* v. *Brooks*, 37 Barb., 476; *Silliman* v. *Wing*, 7 Hill, 159; *Supervisors of Onondaga* v. *Briggs*, 2 Denio, 40; *Trigge* v. *Lavallee*, 15 Moore Pr. C. C., 271; *Clarke* v. *Dutcher*, 9 Cow., 694; *Mowatt* v. *Wright*, 1 Wend., 355; *Wyman* v. *Farnsworth*, 3 Barb., 369.) They also cited *Homer* v. *Wood* (15 Barb., 371); *Winslow* v. *Buel* (11 How. Pr., 373); *Harmon* v. *Bird* (22 Wend., 112); *Whitney* v. *Lewis* (21 id., 130); *Reed* v. *Randall* (29 N. Y., 358).

Carpentier *v.* Minturn.

Present—BARNARD, P. J. and TAPPEN, J.

The judgment was affirmed; and the following opinion, given by GILBERT, J., below, adopted as that of the court, viz.:

GILBERT, J.   I think the demurrer is well taken.

The California statute of limitations is not a bar here. Nor can it have the effect of varying the contract. That was made, and was to be performed in California. The law of that State, therefore, governs the contract. By that law the exorbitant rate of interest was lawful, and the plaintiff may enforce the contract in that respect as well as any other.

With respect to the counter-claim, it is alleged that there was a failure of the consideration of the defendant's obligation, for the reason that the plaintiff sold the defendant an exclusive ferry right, whereas, the right which actually passed under his grant was not an exclusive one. The plaintiff transferred precisely the right which was granted to him by the town of Oakland. The defendants enjoyed the subject of the grant during the time the payments sought to be recovered back were made. After these payments were made it was judicially determined that by a proper construction of the act of the legislature of California, by which the right to establish ferries was conferred upon the town of Oakland, no power to grant an exclusive right was given. No doubt this very much impaired the value of the ferry right which the defendants bought of the plaintiff. There is no averment, however, of any fraud or misrepresentation or surprise. Both parties, no doubt, supposed the grant made by the town of Oakland was that which it in terms purported to be, an exclusive one. The mistake arose from a misconstruction of the statute of California under which the grant was made. This clearly was one of law, and not only that, but of the general law of the land. There was no mistake as to any fact in the transaction.

I think it would be unsettling a well established and salu-

tary rule to allow the defendants to take advantage of such a mistake. The cases cited by the counsel for the defendants are not in conflict with the rule. In all of them there were other ingredients, independent of the mere ignorance of law. The mistake of law was not *per se* the foundation of relief, but was only the medium of proof by which some other ground of relief was established.

There must be judgment for the plaintiff on the demurrer, with costs, with leave to the defendants to amend on payment of costs.